## GARRETT v. JONES.

No. 33136. Feb. 17, 1948.

Rehearing Denied Nov. 23, 1948.

*200 P. 2d 402.*

J. S. Severson and Chas. W. Wortman, both of Tulsa, for plaintiff in error.

O. L. Isaacs, of Emporia, Kan., and Hudson, Hudson & Wheaton, of Tulsa, for defendant in error.

WELCH, J. In this case Florence B. Garrett sued Lloyd K. Jones, individually, and doing business as Jones Construction Company, for damages, stating two causes of action.

For a first cause of action stated in the petition plaintiff alleged ownership of certain described real estate lying along the bank of the Arkansas river; that the defendant forcibly entered upon said lands and without lease or license from plaintiff or any payment to plaintiff, and without any condemnation proceedings, took her land and used the soil therefrom and built thereon what is commonly called the West Tulsa Levee, for which taking she sought actual and punitive damages.

For a second cause of action plaintiff alleged that defendant caused her to be falsely arrested and imprisoned.

Defendant answered the separate charges by a general denial, and, in reference to plaintiff's first cause of action, stated: That drainage district No. 12 of Tulsa county, Oklahoma, agreed to furnish easements and right of way for the levee to the United States; that the United States Government, by written contract, employed defendant to build the levee, and in said contract agreed to provide right of way at the site of the work and access thereto at no expense to the contractor; that defendant built the levee in accordance with said contract and in doing so was the Government's agent and not liable to plaintiff for failure to obtain right of way.

The lands involved were accreted lands. Plaintiff introduced evidence concerning her claim of ownership of the land, of her use thereof and of the value of the land; that defendant entered upon said land over her protest and constructed the levee as alleged in her petition; that she had never received any payment for the land taken or offer of payment, and that no proceeding in condemnation to take the lands for such purpose or any purpose had ever been instituted. Further testimony was given concerning the details of her arrest and imprisonment.

The defendant's demurrer to the evidence was sustained as to the second cause of action and overruled as to the first.

A contract entered into between the United States Government and the defendant was introduced in evidence. It provided that defendant should perform the work for construction of certain levees at certain sites which included the lands claimed by plaintiff; that such work be done by the defendant in accord with the plans and specifications set forth and under the general direction and supervision of the contracting officer of the Government, who was a representative of the United States Engineers. The contract contained this provision:

"Right-of-way at the site, the work and access thereto will be provided by the Government at no expense to the contractor."

The defendant then presented testimony to show that before his entry upon the land of plaintiff, the United States Engineers had entered and driven stakes outlining the area of the work to be performed by him under the contract, and that he had entered and performed the work in strict accordance

with the plans and specifications for construction set forth in the contract.

At the close of all the evidence the trial court directed a verdict in favor of the defendant, and plaintiff appeals.

All assignments of error are presented by plaintiff under five propositions: The first four propositions relate to the first cause of action and the contention of plaintiff that defendant is liable for the taking of her property regardless of his status as a government contractor at the time of the taking. The defendant does not contend that plaintiff should not be paid for the taking, but contends that plaintiff should proceed against the drainage district as in condemnation or against the Government in the Court of Claims, and that defendant is not liable.

Both parties in their brief cite the case of Yearsley v. W. A. Ross Construction Co., 309 U.S. 18, 60 S. Ct. 413, 84 L. Ed. 554. The following rules are stated in the headnotes in 84 L. Ed. 554:

"A government contractor is not liable for acts done by him in executing the will of Congress under authority validly conferred by it on him.

"An agent or officer of the United States purporting to act on its behalf is liable for his conduct causing injury to another only if he exceeds his authority or if such authority was not validly conferred on him.

"A government contractor acting under authority validly conferred upon him cannot be held liable for damage to property upon the ground that such damage constitutes a taking of property without just compensation under the Fifth Amendment, the remedy in such a case being by suit against the government in the Court of Claims."

In this cited case the action was brought to recover damages for land which petitioner alleged respondent had caused to be washed away by building dikes on the Missouri river. Respondent alleged in defense that the work was done pursuant to a contract with the Government. The United States Supreme Court in its opinion said:

"The Court of Appeals also found it to be undisputed 'that the work which the contractor had done in the river bed was all authorized and directed by the Government of the United States for the purpose of improving the navigation of this navigable river'. It is also conceded that the work thus authorized and directed by the governmental officers was performed pursuant to the Act of Congress of January 21, 1927, 44 Stat. at L. 1010, 1013.

"In that view, it is clear that if this authority to carry out the project was validly conferred, that is, if what was done was within the constitutional power of Congress, there is no liability on the part of the contractor for executing its will. See Den ex dem. Murry v. Hoboken Land & Improv. Co., 18 How. (U.S.) 272, 283, 15 L. Ed. 372, 377; Lamar v. Browne, 92 U.S. 187, 199, 23 L. Ed. 650, 655; The Habana, 189 U.S. 453, 465, 47 L. Ed. 901, 903; 23 S. Ct. 593. Where an agent or officer of the Government purporting to act on its behalf has been held to be liable for his conduct causing injury to another, the ground of liability has been found to be either that he exceeded his authority or that it was not validly conferred. (Citations.)

"Petitioners present the question whether the building of the dikes and the erosion of their land, because of the consequent diversion of the current of the river, constituted a taking of their property for which compensation must be made. We do not find it necessary to pass upon that question, for if the authorized action in this instance does constitute a taking of property for which there must be just compensation under the Fifth Amendment, the Government has impliedly promised to pay that compensation and has afforded a remedy for its recovery by a suit in the Court of Claims. (Citations)

" 'The Fifth Amendment does not entitle him (the owner) to be paid in advance of the taking' and the statute affords a plain and adequate remedy. Hurley v. Kincaid, supra. It follows that as the Government in such a case

promises just compensation and provides a complete remedy, action which constitutes the taking of property is within its constitutional power and there is no ground for holding its agent liable who is simply acting under the authority thus validly conferred. The action of the agent is 'the act of the government.' United States v. Lynah, 188 U.S. 445, 47 L. Ed. 539, 23 S. Ct. 349, supra.

"So, in the case of a taking by the Government of private property for public use, such as petitioners allege here, it cannot be doubted that the remedy to obtain compensation from the Government is as comprehensive as the requirement of the Constitution, and hence it excludes liability of the Government's representatives lawfully acting on its behalf in relation to the taking."

In this case we notice that the Congress of the United States had declared that in the interest of the general welfare "the Federal Government should improve or participate in the improvement of navigable waters or their tributaries, including watersheds thereof, for flood control purposes," and has provided that such improvements "shall be prosecuted by the War Department under the direction of the Secretary of War and supervision of the Chief Engineers," and has provided for the acquisition of lands, easements and rights of way for such purposes; see 33 U.S.C.A. §§701a, 701b, 701c, 701c-1..

Beyond question Congress acting within its constitutional power authorized the War Department to cause the construction of flood control projects such as the levees built by defendant, and authorized the taking of lands for such purpose for which the Government upon the taking has promised compensation. The fact that those charged with the executions of the Act of Congress may have caused construction to commence on a project located on private property without having negotiated an easement or having formally instituted a proceeding in condemnation does not affect the validity of the Act.

Although plaintiff's lands were taken at a time when no easement had been granted or condemnation commenced, such fact does not now appear material. Plaintiff asserts that defendant's entry upon her land over her protest was unlawful; however, her claim is for compensation for the taking, and in such taking defendant was acting for the Government. The compensation promised in a taking by the Government and which plaintiff may obtain in a proceeding in the Court of Claims, is, in law, the same as that which would have been awarded had easement been procured by negotiation or as a result of condemnation, that is, full compensation for all damages to the property taken and subjected to the public use.

In Hurley v. Kincaid, 285 U. S. 95, 76 L. Ed. 637, 52 S. Ct. 267, the action was brought to enjoin the receiving of bids and awarding of contracts for the construction of certain guide levees bounding a floodway. Such work was authorized by an Act of Congress. It was urged that such construction would cause a flooding and taking of the complainant's land and should be enjoined until the property had been acquired by the Government either by purchase or by condemnation. The application for injunction was granted and upon appeal the Supreme Court of the United States reversed the judgment. In that court's opinion, it was said:

" . . . Kincaid concedes that the Act is valid and that it authorizes those entrusted with its execution to take his lands or an easement therein. We may assume that, as charged, the mere adoption by Congress of a plan of flood control which involves an intentional, additional, occasional flooding of complainant's land constitutes a taking of it—as soon as the Government begins to carry out the project authorized. Compare United States v. Lynah, 188 U.S. 445, 469, 47 L. Ed. 539, 548, 23 S. Ct. 349; United States v. Cress, 243 U.S. 316, 328, 61 L. Ed. 746, 753, 37 S. Ct. 380; Peabody v. United States, 231 U.S. 530, 538, 58 L. Ed. 351, 353, 34 S. Ct. 159; Portsmouth Harbor, Land &

Hotel Co. v. United States, 250 U. S. 1, 63 L. Ed. 809, 39 S. Ct. 399; 260 U. S. 327, 329, 67 L. Ed. 287, 289, 43 S. Ct. 135. If that which has been done, or is contemplated, does constitute such a taking, the complainant can recover just compensation under the Tucker Act in an action at law as upon an implied contract, since the validity of the Act and the authority of the defendants are conceded. (Citations) The compensation which he may obtain in such a proceeding will be the same as that which he might have been awarded had the defendants instituted the condemnation proceedings which it is contended the statute requires. Nor is it material to inquire now whether the statute does so require. For even if the defendants are acting illegally, under the Act, in threatening to proceed without first acquiring flowage rights over the complainant's lands, the illegality, on complainant's own contention, is confined to the failure to compensate him for the taking, and affords no basis for an injunction if such compensation may be procured in an action at law. The 5th Amendment does not entitle him to be paid in advance of the taking. . . ."

Herein, whether it be considered that the taking of plaintiff's land commenced upon the passage of the Act authorizing such construction and taking, or when the United States Engineers had completed its survey and staked that land and awarded a contract for the construction or at the time defendant entered her premises, the effect is the same.

The taking was for the public use and authorized by a valid statute. Any asserted wrongful act of any officer, agent or contractor of the Government in the method or manner of the taking resting on their failure to secure permission from the owner or compensate the owner for the taking was adopted by the sovereign power when and as committed and causes such act of the officer, agent or contractor to be, in virtue of the statute, a rightful appropriation by the Government, for which compensation is provided, and thus operates to relieve such agent or contractor from liability for the taking.

The defendant, a government contractor, acting under authority validly conferred in relation to the taking of plaintiff's land and not having exceeded his authority in the performance of the work done on the land, is not liable to plaintiff for the land taken.

Plaintiff asserts that the trial court erred in sustaining a demurrer to the evidence presented in support of her second cause of action, wherein she charged the defendant with having caused her to be wrongfully arrested.

Plaintiff testified that she objected to the defendant building the levee on her land, and that defendant's construction superintendent threatened to have her arrested and thrown in jail; that a few days thereafter she was arrested and placed in the county jail and kept there for two days. The charge filed against her was thereafter dismissed.

It was shown, however, that an attorney for the drainage district called at the office of the county attorney and suggested that a warrant issue for the arrest of plaintiff for obstructing the progress of the levee. That office sent two county officers to make an investigation and thereafter filed complaint against the plaintiff charging her with obstructing a drainage ditch and caused a warrant to issue upon which she was arrested and imprisoned.

We have reviewed all the evidence relating to the arrest of the plaintiff. Assuming that defendant desired the arrest of plaintiff as contended by plaintiff, the record reveals no testimony showing that defendant directly or indirectly procured, participated in, or proximately caused her to be arrested or imprisoned. The demurrer was properly sustained.

The judgment is affirmed.

DAVISON, V.C.J., and BAYLESS, CORN, GIBSON, ARNOLD, and LUTTRELL, JJ., concur. RILEY, J., dissents.